UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

MARK GOUPIL,

                  Petitioner,      **No. 1:14-cv-00709-MAT**

    -vs-                                **DECISION AND ORDER**

SUPERINTENDENT HAROLD GRAHAM,
Auburn Correctional,

                  Respondent.

---

## INTRODUCTION

Represented by counsel, Mark Goupil ("Petitioner") has petitioned this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner is currently incarcerated in Respondent's custody pursuant to a judgment entered on February 17, 2010, in New York State, Niagara County Court (Murphy, J.), following a jury verdict convicting him of three counts of Predatory Sexual Assault Against a Child (N.Y. Penal Law ("P.L.") § 130.96).

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Over the course of ten months, between May 2008 and February 2009, Petitioner compelled S.L., the nine-year-old daughter of his girlfriend, to engage in sexual intercourse and other sexual acts with him. At that time, Petitioner was living with S.L.'s mother.

In February 2009, Petitioner's relationship with S.L.'s mother ended, and he moved out of their residence. Two months later, S.L. disclosed the abuse to her mother. She testified that she did so then because, with Petitioner out of the home, she finally felt

safe to disclose the abuse without fear of reprisals to her or her two siblings.

After learning of the abuse, S.L.'s mother called the police, and S.L. was interviewed by a state trooper. The state trooper brought S.L. and her mother to the hospital, where the victim was physically examined by Sexual Assault Nurse Examiner Kelly Whitsell ("Whitsell"). Subsequently, S.L. underwent a videotaped interview by forensic interviewer Lynn Aladeen ("Aladeen") at the Child Advocacy Center. S.L. also testified before the grand jury.

At trial, the prosecution called S.L., S.L.'s mother, the state troopers involved in the investigation, Aladeen, and Whitsell, and S.L.'s brother. The prosecution also called pediatric nurse Jackie Collard ("Collard"), who testified as an expert witness concerning the results of clinical examination of S.L.; and Stefan Perkowski ("Perkowski"), who testified as an expert witness on child sexual abuse accommodation syndrome ("CSAAS").

On May 1, 2008, S.L. testified that she was outside playing with her neighbor when Petitioner told S.L. that she needed to sweep the floor inside the trailer. Petitioner then took S.L. into his bedroom. S.L. recalled that Petitioner removed her clothes, removed his own, and rubbed lotion on his "private." T.593, 596.[1] Petitioner then picked her up, and placed her on top of him, and proceeded to "move [her] around," which caused her pain. T.593.

---

[1] Citations to "T." refer to pages from the trial transcript.

In addition, S.L. testified, Petitioner also inserted his "private" into her mouth. T.598-99. Afterwards, Petitioner made her S.L. sweep the trailer, and then allowed her to go back outside to play with her friend. T.600. S.L. remembered the date of that incident because it was the same day she went to the movies to see "Horton Hears a Who" with her neighbor friend. T.592-93, 600.

S.L. described what Petitioner did to her, using a stuffed bear to indicate what body parts were involved. T.638-45. Between May of 2008 and February 2009, S.L. testified, Petitioner touched her sexually "[m]aybe twice a week." T.647-48. S.L. said that these incidents occurred when her mother was at work. T.649. S.L. testified that her sister and brother also were home on these occasions, in their bedrooms. S.L. testified that Petitioner "did most [sic] the same things all the time," which included putting "his private inside [her] private" and inside her mouth. T.652. S.L. also described Petitioner touching her "bottom" and touching her with his hands on occasion. T.652-53. S.L. did not tell anyone what happened because she was scared that Petitioner would hurt her, and that he had hit her and her brother and sister on occasion. T.655-57.

S.L. testified that the last time Petitioner touched her sexually was at the end of February 2009. T.646-47. S.L. was at her father's house in March 2009, when she telephoned her mother to tell her what had happened. T.657-59. S.L. waited to tell her

mother about the abuse after Petitioner left, because he was then out of the house and would not hurt her. T.657.

Whitsell testified about her observations from her clinical examination of S.L. According to Whitsell, S.L.'s hymenal notch was consistent with a history of sexual abuse, but was not a specific sign of either sexual abuse or penetration of the vagina because "in and of itself[, a hymenal notch] can be a normal finding." T.788-90. Whitsell testified that many things could cause such a notch, such as "tampon insertion," or a "fall, a blunt-force trauma, a finger, a penis, objects, or nothing at all." T.790. There are females who have never been sexually abused but still have hymenal notches. T.791.

Perkowski testified that CSAAS is generally accepted within the mental health and scientific communities as valid, insofar as it relates to the behaviors exhibited by child victims of sexual abuse. T.802, 811. Perkowski testified about the five components of CSAAS and how they typically are manifested. T.814-20. For instance, children often provided delayed, conflicting, or unconvincing accounts of the abuse. T.814, 818. CSAAS is not a diagnostic tool, but it is used to understand a child's behavior after experiencing sexual abuse. T.832-33.

Over defense objection, the prosecution called Collard, who testified that it was possible for a child to have normal hymenal findings even though she has been sexually abused as often as twice a week for nine months. T.798-803, 813-17, 831-36.

The defense presented two witnesses: Dr. Demerath and Petitioner's mother. Dr. Demerath was an expert witness who provided rebuttal testimony regarding CSAAS.

After a four-day trial, the jury returned a verdict of guilty on all charges in the indictment.

Through counsel, Petitioner filed a direct appeal of his conviction, which was unanimously affirmed by the Appellate Division, Fourth Department, New York State Supreme Court, on March 15, 2013. People v. Goupil, 104 A.D.3d 1215 (4th Dep't 2013). Leave to appeal to the New York Court of Appeals was denied on May 31, 2013. People v. Goupil, 21 N.Y.3d 943 (2013).

Through retained counsel, Petitioner filed the instant petition (Docket No. 1), asserting the following grounds for relief: (1) he was denied his right to a fair trial due to the improper introduction of CSAAS testimony; and (2) he was denied the effective assistance of trial counsel because his attorney failed to investigate or present evidence to refute the prosecution's expert medical testimony, failed to present expert testimony to rebut the prosecution's CSAAS testimony, and failed to conduct effective cross-examination. Respondent filed an answer and memorandum of law in opposition to the petition, and Petitioner filed a reply.

On March 16, 2018, the Court issued an order finding that Petitioner had presented this Court with a "mixed petition." In particular, Petitioner's claim that trial counsel failed to

adequately prepare by consulting with and retaining an expert witness on behalf of the defense was unexhausted because Petitioner still had available state court remedies. Petitioner was given the opportunity to amend his petition to withdraw the unexhausted claim; withdraw his petition in its entirety, without prejudice and with leave to refile; or seek a stay-and-abeyance order to preserve the timeliness of his original petition while he returns to state court for the purpose of presenting his unexhausted claim to the state courts.

Petitioner subsequently filed a motion to amend his petition to withdraw the unexhausted claim and to proceed only the exhausted claims. Respondent took no position on the motion to amend, which the Court granted.

For the reasons discussed below, Petitioner's petition, as amended, is dismissed.

**DISCUSSION**

I. **Ground One: Erroneous Introduction of Expert Testimony Regarding CSAAS**

Petitioner asserted on direct appeal he was denied a fair trial because the judge erroneously allowed Perkowski to testify regarding CSAAS as an expert witness for the prosecution. The Appellate Division held that the claim was unpreserved for review and, in any event, without merit. Respondent argues that the Appellate Division's reliance on an adequate and independent state ground forecloses federal habeas review of this claim. In the

alternative, Respondent asserts that the claim fails on the merits. As discussed below, the Court agrees that the claim is procedurally barred.

Federal habeas review is generally prohibited if a state court rests its judgment on a state law ground that is "'independent of the federal question and adequate to support the judgment.'" Cotto v. Herbert, 331 F.3d 217, 238 (2d Cir. 2003) (quoting Coleman v. Thompson, 501 U.S. 722, 729 (1991)). Even where "the state court has also ruled in the alternative on the merits of the federal claim[,]" Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990), "federal habeas review is foreclosed" provided that the "state court has expressly relied on a procedural default as an independent and adequate ground. . . ." Id. A state procedural bar will generally be deemed "adequate" to preclude habeas review if it is "firmly established and regularly followed." Lee v. Kemna, 534 U.S. 362, 376 (2002) (quotation omitted)). In determining adequacy of a state procedural bar, the Second Circuit has looked at (1) whether the alleged procedural violation was actually relied on in the state court, and whether perfect compliance with the state rule would have changed the state court's decision; (2) whether state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner "substantially complied" with the rule and, therefore, whether demanding perfect compliance with the rule would serve a legitimate

governmental interest. Cotto, 331 F.3d at 240 (citing Lee, 534 U.S. at 386-87).

Here, the Appellate Division relied upon the "contemporaneous objection rule" to dismiss Petitioner's claim. Codified at Section 470.05(2) of the New York Criminal Procedure Law ("C.P.L."), the contemporaneous objection rule requires that a criminal defendant make a timely and specific objection to the alleged error in order to preserve the error for appellate review. E.g., People v. Hawkins, 11 N.Y.3d 484, 492 (2008). The New York courts have consistently applied C.P.L. § 470.05(2) to require criminal defendants who challenge the constitutionality of penal statutes with which they are charged to raise such a challenge before the trial court in order to preserve the issue for appellate review. E.g., People v. Baumann & Sons Buses, Inc., 6 N.Y.3d 404, 408 (2006); People v Davidson, 98 N.Y.2d 738, 739-40 (2002)The Court's review of the pertinent caselaw confirms that it is a "firmly established and regularly followed state practice" to hold constitutional challenges to statutes unpreserved based upon the failure to present the constitutional issue to the trial court. After reviewing the Appellate Division's reliance on the contemporaneous objection rule in this case against the Cotto factors, the Court finds that it was an "adequate" state ground precluding habeas review.

Petitioner can overcome this procedural bar if he can show both "'cause' for noncompliance with the state rule and 'actual

-8-

prejudice resulting from the alleged constitutional violation.'" Smith v. Murray, 477 U.S. 527, 533 (1986) (quoting Wainwright v. Sykes, 433 U.S. 72, 84 (1977); Murray v. Carrier, 477 U.S. 478, 485 (1986)). An alternative manner of overcoming a procedural default is for the petitioner to show that the "failure to consider [the claim] . . . will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. at 750.

Here, Petitioner argues that "cause" exists because his trial counsel was ineffective for, among other things, failing to preserve the CSAAS claim for appeal by objecting to the expert testimony. Even assuming for the sake of argument that this claim of ineffective assistance of counsel could serve as cause to excuse the procedural default, Petitioner cannot demonstrate prejudice resulting from any error by counsel. The Appellate Division considered Petitioner's evidentiary claim on the merits,[2] notwithstanding the lack of preservation, and determined that it was without merit. See, e.g., Swail v. Hunt, 742 F. Supp.2d 352, 364 (W.D.N.Y. 2010) (holding that the petitioner "cannot demonstrate that he was prejudiced by trial counsel's failure to preserve the insufficiency claim by means of a renewed motion for

---

[2] The fact that the Appellate Division also went on to hold that the evidence was legally sufficient to support the verdict does not negate the finding of a procedural bar based upon the adequate and independent state ground doctrine. E.g., Glenn v. Bartlett, 98 F.3d 721, 724-25 (2d Cir. 1996) (when a state court says that a claim is "not preserved for appellate review" and then rules "in any event" on the merits, such a claim is not preserved) (citing Harris v. Reed, 489 U.S. 255, 264 n. 10 (1989) (explaining that "a state court need not fear reaching the merits of a federal claim in an alternative holding" so long as it explicitly invokes a state procedural rule as a separate basis for its decision)).

a trial order of dismissal after the defense case, because the Appellate Division considered the merits of the insufficiency claim, notwithstanding the lack of preservation"). Petitioner's failure to demonstrate prejudice obviates the need to consider whether "cause" exists. See Stepney v. Lopes, 760 F.2d 40, 45 (2d Cir. 1985) ("Since a petitioner who has procedurally defaulted in state court must show both cause and prejudice in order to obtain federal habeas review, we need not, in light of our conclusion that there was no showing of cause, reach the question of whether or not [the petitioner] showed prejudice."). Finally, the miscarriage of justice exception is limited to the extraordinary case where a constitutional violation has probably resulted in the conviction of one who is actually innocent. Schlup v. Delo, 513 U.S. 298, 327 (1995). Petitioner has not attempted to make such a showing. Accordingly, Petitioner's evidentiary claim is dismissed as subject to an unexcused procedural default.

**II. Ground Two: Ineffective Assistance of Trial Counsel**

Petitioner contends that he was denied the effective assistance of trial counsel because his attorney (a) failed to present expert testimony to rebut the prosecution's CSAAS testimony, and (b) deficiently cross-examined the prosecution's witnesses. Respondent argues that Petitioner's first ineffective assistance of trial counsel ("IATC") claim is unexhausted but must be deemed exhausted and procedurally defaulted. As to the second

claim of IATC, Respondent concedes that is exhausted, but argues that it is without merit.

   **A. The IATC Claim Regarding the Failure to Rebut the CSAAS Testimony is Unexhausted But Must Be Deemed Exhausted and Procedurally Defaulted**

Exhaustion of available state court remedies is a prerequisite for a habeas petitioner seeking to overturn his state conviction on the ground that his federal constitutional rights were violated. See 28 U.S.C. § 2254(b); Baldwin v. Reese, 541 U.S. 27, 29 (2004). "Each substantially independent factual claim made in support of an allegation of ineffective assistance of counsel must be fairly presented to a state court before a federal habeas court may rule upon it." Jelinek v. Costello, 247 F. Supp.2d 212, 267 (E.D.N.Y. 2003) (citing Rodriguez v. Hoke, 928 F.2d 534, 538 (2d Cir. 1991)); see also Ramirez v. Att'y Gen. of N.Y., 280 F.3d 87, 96 (2d Cir. 2001) ("[T]he factual basis for an ineffective assistance claim must, like other issues, be presented to all relevant state courts.").

On direct appeal, appellate counsel presented one point heading in his brief concerning trial counsel's performance. The point heading stated that "counsel rendered ineffective assistance in cross[-]examining the complainant and failing to object to improper closing argument by the prosecution[.]" SR.033 (capitals omitted).[3] Then, in the argument section under this point heading,

---

[3] Citations to "SR." refer pages in the state court record.

appellate counsel asserted that "counsel was ineffective in her cross-examination of the Complainant and in failing to object to several improper statements in the prosecution's closing statements, all of which seemed to improperly bolster the Complainant's credibility." Id. Specifically, appellate counsel criticized trial counsel for defense counsel conducting a lengthy cross-examination in which she "elicit[ed] more incidents and details than were elicited by the prosecution." SR.034 (citing T.677-751). The cases cited by appellate counsel dealt with situations in which trial attorneys failed to adequately impeach complainants in sexual assault cases. The final page of appellate counsel's argument under the ineffective assistance point heading concerned trial counsel's failure to object to allegedly improper prosecutorial remarks and preserve them for review. It is clear that appellate counsel at no time discussed trial counsel's cross-examinations of any other prosecution witnesses in his brief.

Petitioner contends in his Reply that he did exhaust this claim because he raised his ineffective assistance of counsel argument as to defense counsel's failure to effectively cross-examine S.L., and therefore "[w]here an additional factual claim in support of the ineffective assistance allegation merely supplements the ineffectiveness claim and does not fundamentally alter it, the court may consider it in a habeas petition." (Docket No. 15 at 2 (quoting Gersten v. Senkowski, 299 F. Supp.2d 84, 100 (E.D.N.Y. 2004) (citing Caballero v. Keane, 42 F.3d 738, 741

(2d Cir. 1994)). The cases relied on by Petitioner are inapposite. The Court therefore agrees with Respondent that Petitioner did not fairly present his claims that trial counsel failed to competently cross-examine the expert witnesses, leaving the claims unexhausted.

These claims must be deemed exhausted, however, because Petitioner no longer has available remedies in state court. See, e.g., Bossett v. Walker, 41 F.3d 825, 829 (2d Cir. 1994) (deeming claims exhausted where it "would . . . be fruitless to require [the petitioners] to pursue these claims in state court"). First, Petitioner has already completed his direct appeal. By statute, New York law used to specifically provide for only a single application for direct review. Spence v. Sup't, Great Meadow Corr. Fac., 219 F.3d 162, 170 (2d Cir. 2000) (relying on former New York Rules for the Court of Appeals ("N.Y. R. Ct.") § 500.10(a) (discussing leave applications for criminal appeals)). N.Y. R. Ct. § 500.10 has since been amended, and criminal leave applications are now addressed in N.Y. R. Ct. § 500.20. Although § 500.20 "does not specifically state that there may be only one application for appeal, see N.Y. R. Ct. § 500.20, such a restriction may be inferred," since "[b]oth Rule 500.20(d) and CPL § 460.10(5) provide a 30-day window for any such application to be filed; this time limit would be meaningless were multiple applications permitted." Colon v. Connell, No. 07 Civ. 7169(BSJ)(JCF), 2009 WL 2002036, at *6 n. 4 (S.D.N.Y. July 9, 2009). In addition, N.Y. R. Ct. § 500.20(a)(2) provides that the leave letter must indicate that

-13-

"that no application for the same relief has been addressed to a justice of the Appellate Division, as only one application is available[.]" N.Y. R.CT. § 500.20(a)(2).

The only other way for Petitioner to exhaust this habeas claim would be to file a motion to vacate the judgment pursuant to C.P.L. § 440.10. Because the claim is based on matters of record and could have been raised on direct appeal, denial of such a motion is statutorily mandated. See N.Y. Crim. Proc. Law § 440.10(2)(c).

The procedural rules that foreclose Petitioner's return to state court also render his suggestive identification procedure claim procedurally defaulted. See Bossett, 41 F.3d at 829. "Federal courts may address the merits of a claim that was procedurally defaulted in state court only upon a showing of cause for the default and prejudice to the petitioner." Id. (citing Wainwright v. Sykes, 433 U.S. 72, 87 (1977)). "Cause may be demonstrated with 'a showing that the factual or legal basis for a claim was not reasonably available to counsel, . . . or that "some interference by state officials" made compliance impracticable, . . . [or that] the procedural default is the result of ineffective assistance of counsel.'" Id. (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986) (citations omitted in original; ellipses and brackets in original). Although Petitioner does have one fully exhausted ineffective assistance of trial counsel claim, it is not meritorious, as discussed infra. Therefore, it cannot serve as "cause." See, e.g., Bloomer v. United States, 162 F.3d 187, 191 n. 1 (2d Cir. 1998)

-14-

("Ineffective assistance will constitute cause when it rises to a constitutional violation of a petitioner's Sixth Amendment right to have the effective assistance of counsel for his defense.") (citing Coleman v. Thompson, 501 U.S. 722, 755 (1991)). Petitioner's inability to show "cause" is fatal to any attempt to overcome the default because the Supreme Court's "cause" and "prejudice" requirement is phrased in the conjunctive. Engle v. Isaac, 456 U.S. 107, 134 n.43 (1982) (citation omitted).

As alternative to showing cause and prejudice, "[a] habeas petitioner may bypass the independent and adequate state ground bar by demonstrating a constitutional violation that resulted in a fundamental miscarriage of justice, i.e., that he is actually innocent of the crime for which he has been convicted." Dunham v. Travis, 313 F.3d 724, 730 (2d Cir. 2002) (citing Schlup, 513 U.S. at 321; other citation omitted). Petitioner has not attempted to argue that he is actually innocent. Therefore, he cannot rely on the fundamental miscarriage of justice exception. His first two ineffective assistance of trial counsel claims accordingly are dismissed as subject to an unexcused procedural default.

### B. The Claim Based on Counsel's Ineffective Cross-Examination of the Victim Is Exhausted But Meritless

The Sixth Amendment provides that in all criminal prosecutions, the accused shall enjoy the right to the assistance of counsel. U.S. CONST., amend. VI. A lawyer's representation is constitutionally deficient where it (1) falls "below an objective standard of reasonableness;" and (2) there is a "reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 688, 694 (1984). Recognizing the "tempt[ation] for a defendant to second-guess counsel's assistance after conviction or adverse sentence," id. at 689, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." id. To fulfill the prejudice prong, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. "That requires a 'substantial,' not just 'conceivable,' likelihood of a different result. Cullen v. Pinholster, 563 U.S. 170, 189 (2011) (quotation omitted).

Petitioner claims that trial counsel's cross-examination of the victim was ineffective because, by asking her to explain her allegations in greater detail than she had done during her direct examination, counsel effectively bolstered her credibility and unwittingly elicited additional instances of abuse. The Appellate Division adjudicated this claim on the merits, finding that Petitioner was simply "'[s]peculati[ng] that a more vigorous cross-examination might have [undermined the credibility of a witness] [which] does not establish ineffectiveness of counsel[.]'" Goupil, 104 A.D.3d at 1217 (quoting People v. Bassett, 55 A.D.3d

-16-

1434, 1438 (4th Dep't 2008)). To succeed on this claim, Petitioner therefore must show that the Appellate Division's holding was contrary to, or an unreasonable application of, Strickland. See Harrington v. Richter, 562 U.S. 86, 101-02 (2011). "The Strickland standard is a general one, so the range of reasonable applications is substantial." Harrington, 562 U.S. at 105 (citation omitted).

Whether and how to conduct cross-examination is a matter of trial strategy, and "[t]he wisdom of counsel's strategy must be judged based on the circumstances as a whole as they stood at the time counsel made his decisions." Hodge v. Haeberlin, 579 F.3d 627, 642 (6th Cir. 2009) (citing Strickland, 466 U.S. at 689) (stating that "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time")). Given the he-said, she-said nature of the case against Petitioner, trial counsel had no choice but to try to discredit his accuser's testimony as much as possible. Trial counsel reasonably decided to do so, in part, by subjecting S.L. to cross-examination, "the principal means by which the believability of a witness and the truth of [her] testimony are tested." Davis v. Alaska, 415 U.S. 308, 316 (1974). Trial counsel clearly had a strategic reason for questioning S.L. about the acts of which she accused Petitioner; during summation, trial counsel used these details to argue that

-17-

S.L.'s description of how the sexual acts were committed was physically impossible. Trial counsel also argued that the small size and configuration of the trailer where Petitioner allegedly assaulted S.L. made it implausible that the abuse could have occurred without any of the other residents knowing about it. Petitioner, however, contends that trial counsel committed an unreasonable error by not correcting S.L. when she insisted that the first date of abuse was Saturday, May 1, 2008, when that date actually fell on a Thursday. Petitioner also asserts that trial counsel should have highlighted the "glaring" inconsistency in S.L.'s testimony about her mother's work schedule on May 1, 2008. Petitioner notes that S.L. testified that, on the first day the abuse occurred her, her mother left for work at 12:30 p.m. Petitioner points out that S.L.'s mother testified that she did not work any shifts in May that began around that time; rather, her shifts went from 8:30 a.m. to 3:30 p.m. It is pure speculation on Petitioner's part to argue that these discrepancies would have materially undermined the veracity of S.L.'s account, particularly where S.L. testified to other details about the day that caused her to remember it. For instance, she testified that it was the same day she had a play date in the early afternoon with her neighbor, which supports her recollection that it was a Saturday. In addition, S.L. testified that it was the day that she and her neighbor went to an 8 o'clock showing of Horton Hears a Who.

In any event, to prove the elements of the crime of predatory sexual assault against a child (P.L. § 130.96), the prosecution was required to prove that Petitioner, being over age 18, for a period "not less than three months in duration," engaged in "two or more acts of sexual conduct, which include[d] at least one act of sexual intercourse [or] oral sexual conduct" with a child under age 13 (P.L. § 130.75(1)(b)). Even if trial counsel had conducted the cross-examination as Petitioner wished, and sufficiently discredited S.L.'s testimony about the May 1, 2008 incident, S.L. testified about multiple other incidents that were sufficient to satisfy the elements of the crime charged. The notion that trial counsel may have been more effective in her impeachment had she taken another course "is precisely the sort of tactical judgment that Strickland counsels against second-guessing." Esparza v. Sheldon, 765 F.3d 615, 624 (6th Cir. 2014) (citing Strickland, 466 U.S. at 689). The failure to probe into the inconsistencies noted by Petitioner, in light of trial counsel's otherwise extensive cross-examination, does not undermine the presumption that her "conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. Furthermore, Petitioner has not demonstrated a reasonable probability of a different result, but for trial counsel's alleged errors in conducting the cross-examination of S.L. See id. at 694. Thus, Petitioner has not demonstrated the requisite prejudice under Strickland. "[B]ecause his claim does not pass muster under a de novo application of

-19-

Strickland, he necessarily cannot demonstrate that the state court's decision constituted an objectively unreasonable application of Strickland." Darden v. Conway, No. 10-CV-0570 MAT, 2011 WL 3739551, at *6 (W.D.N.Y. Aug. 24, 2011) (citation omitted).

**CONCLUSION**

For the reasons set forth above, petitioner Mark Goupil's request for a writ of habeas corpus is denied and the petition (Docket No. 1) is dismissed. Because there has not been a substantial showing of the denial of a constitutional right, see 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability. The Clerk of Court is directed to close this case.

**IT IS SO ORDERED.**

S/Michael A. Telesca

_____
HON. MICHAEL A. TELESCA
United States District Judge

Dated:   September 25, 2018
         Rochester, New York